First case on the docket is 9519 Alliance Savings v. Wilson et al. Is the appellants ready to proceed? Yes. Fire away. Good morning. Hi. My name is Phil Tice. I am a co-counsel with Marty Mangarelli. We represent Alliance Savings in this case. There is in the appellants' brief a timeline of relevant events that we think will help the justices follow the chronology of facts. There's somewhat convoluted facts in this case, but that will help you all, we believe, in knowing the sequence of events. This is an appeal of a foreclosure case. And there's actually two foreclosure cases that are relevant to this case. There was a first foreclosure filed by Deutsche Bank, the mortgage holder, against homeowners of a house in Granite City, Illinois. Subsequently, there was a second foreclosure case. Alliance Savings filed a foreclosure of its judgment lien subsequent to the first foreclosure case. This is an appeal pertaining to the second foreclosure case. The first foreclosure case, Deutsche Bank did not name permissible parties to that lawsuit, including Alliance Savings. Alliance Savings had a previous judgment lien, and Deutsche Bank either chose or inadvertently failed to name Alliance Savings as a party defendant to that first foreclosure. In your materials, the REACT appellate court case states that permitted parties that are omitted from the first foreclosure are not foreclosed. Their lien remains. The high bidder at the first foreclosure sale, in this case Deutsche Bank, received its title, its judgment fee, subject to omitted lien holders, including Alliance Savings. Subsequently, Alliance Savings, not having been named in the first foreclosure case, filed its own foreclosure, which is permitted under the Illinois foreclosure statute, and named Bank in that second foreclosure. The Bank, for whatever reason, failed to answer. Deutsche Bank was served in California, did not enter its appearance, did not respond to the notice of default, did not respond to the notice of foreclosure sale in the second case, second foreclosure. That second foreclosure, Alliance Savings foreclosure, was concluded. Alliance Savings was the high bidder at its foreclosure sale, and it received a judicial deed to the interest that the homeowner, Mr. Wilson, owned at the time of the foreclosure. More than 11 months after it was served, Deutsche Bank filed a motion to vacate the orders in the second foreclosure case, asking for it to join the case and require us to start the foreclosure from scratch. We believe that would be a waste of judicial resources, time, money. Deutsche Bank, in order to prevail on that motion to vacate our foreclosure, has to show the court that it has meritorious, at least one meritorious defense, and has to show due diligence. Mr. Mingarelli will address the due diligence shortly, but I want to touch on the alleged meritorious defenses that Deutsche Bank has put forth. We don't think any of them are meritorious. First of all, Deutsche Bank says, if we join the second foreclosure, we're going to argue as a defense conventional and or equitable subrogation. Those are recognized theories under Illinois law. They're very good arguments, which could have, should have been made in the first foreclosure case. They cannot be made in the second foreclosure case. The REACT case is very clear that if lien priorities are going to be argued, they must be argued in the mortgage foreclosure case. That foreclosure is over. The first foreclosure, the mortgage is done. The bank's mortgage was merged into the judgment of foreclosure. The judgment of foreclosure was merged into the certificate of sale. The certificate of sale was merged into judicial deed, and hence, today, Deutsche Bank does not have a mortgage to argue priorities. So the conventional and equitable subrogation argument possibly would have been a winning argument in the first foreclosure case, but it chose not to argue those priorities by not naming a other lien holder, a line of savings judgment. They were collaterally stopped from even making the argument in the second foreclosure case. For whatever reason, perhaps their title insurance company missed our lien. Maybe they did it inadvertently, but we were not named in the first foreclosure. Their second argument is that we, a line of savings, should not be permitted to foreclose our judgment lien in the second foreclosure case because the homeowner's husband or wife in Granite City owned their real estate sometime in the past as tenants by the entirety. The tenants by the entirety standard... Does that make any difference to you? Well, it does if the tenants by the entirety continues. But the facts in this case, as revealed by a sworn affidavit of the bank's process server in the first foreclosure case years ago, swore under oath that this house was vacant. Utilities were shut off. These people had left their homestead. In fact, they had established another homestead in Collinsville, Illinois, and the statute is very clear that tenants by the entirety can be terminated in several ways, a divorce, a death of one of the parties, or in this case, abandonment of the homestead. The statute says by operation of law, when the husband and wife vacate, abandon that home, no court ruling is required, no reporting is required in the Madison County Reporter-Beeds Office. By operation of law, if they vacate and abandon that home, the tenants by the entirety becomes a joint tenancy. And as soon as it becomes a joint tenancy, by default, the judgment lien holder against husband only may then enforce its lien. Is there any case law that supports your interpretation of the statute? I don't think there's any Illinois case law that has addressed the issue. The case of Colson, which was a bankruptcy case and is in your materials, interpreted Illinois law 2005, I think the Illinois Central District bankruptcy case, that said as soon as the judgment lien is reported, it vests, it attaches right then. And it can't be enforced as long as the property is held in tenants by the entirety. But as soon as that tenants by the entirety expires for whatever reason, the enforcement, the foreclosure of that lien may proceed. Their argument, the bank's argument is that once it's a tenants by the entirety, the judgment lien can never, under any circumstances, be foreclosed unless it was graded by fraud initially. That's not what the statute says. The statute is clear that the lien attaches at the time it's reported. It's held in abeyance of what happens. It can't be foreclosed at that time. But if the tenancy changes later, as in this case it did, and became a joint tenancy, then the Tolson court correctly stated that the lien holder, the judgment lien holder, may then enforce by foreclosure and sale its judgment lien. Well, you're a lender also. You loan money to people who have tenancies by the entirety. Doesn't the lender rely on that deed in some form or fashion in determining the risk when they make the loan? Perhaps they do. But Illinois law is clear that there are non-record issues that can affect that tenants by the entirety. But Illinois law is clear. There are no cases. You mean your interpretation of the statute? Yeah, I mean the statute is clear in saying that tenants by the entirety, it says by operation of law, is terminated in reverse to a joint tenancy. It would seem this would be something that came up more often than this one case. Sure. And my answer to your question is if you're a lender and you see a tenants by the entirety deed in the chain of title and there's a lien against one of those homeowners, one of the spouses, you lend at your risk. You make that loan at your risk that that tenants by the entirety property may become a joint tenancy in the future. And perhaps you can win that priority argument that, hey, it wasn't a foreclosable lien at the time I lent money. But if you lend that money, you better name that lien holder later on if you foreclose. And if you choose or your title company misses that lien and you don't name it as a permissible party in that foreclosure, the mortgage, you do so at your own risk as a lender. That's what happened in this case. The third argument that they claim is a meritorious argument is they purport that the second foreclosure case was a foreclosure of the entire 100% of the title to this home in Granite City. That's just not the case. That was the representation that Deutch made to the trial judge, and the trial judge seemed to think that that was significant. That's not the case. This property was held as joint tenancy by the husband and wife. The wife did not have a judgment against her by a line savings, a judgment just against the husband. The wife was not named in the second foreclosure suit. We didn't purport to foreclose a lien against her. She was a 50% holder. We can't foreclose against her 50% interest. None of the pleadings indicated that we were foreclosing against 100% of the title. The notice of foreclosure sale, in fact, specifically said it. A lien savings admonishes proposed bidders that the quality and quantity of title is not guaranteed. We're not guaranteeing they're getting 100%, 50%, or 80%. It is up to bidding parties to make that determination of the record title. And so we feel that's not a meritorious argument either because nowhere in the second foreclosure case was it alleged or reported that 100% of the title was being foreclosed. A judgment lien holder can only foreclose against the title which its debtor owns. In this case, the husband owned 50% of the title. When a lien savings got the judicial deed after the second foreclosure, it received 50% of the title, Mr. Wilson's title, in that real estate. And Deutsche Bank retained 50% of the title after the second foreclosure occurred. Mr. Mirabelli is going to address some due diligence issues for us now. Good morning, Your Honor. Just very briefly, the Illinois Supreme Court case of Smith v. Erron basically sets out what needs to be done for a 1401 motion. And it's a meritorious defense, due diligence in the original action, and due diligence in filing a 1401 petition. The problem in this case is the bank, once we served them in the foreclosure, did absolutely nothing. When we had them serve, and there's no evidence that they were not served. We have an affidavit from a process server saying that we properly served Deutsche Bank out in California because that's where the registered agent was. They waited 346 days after being served before they filed a 1401 motion, and it was approximately 184 days after we notified them that we had actually filed a default judgment. Who did you notify? We sent it back out to the same register agent out in California, and they did nothing. And then even after the notice of judicial sale, we sent them notice again saying, hey, we've done something, but still, they filed no response whatsoever. And basically, the Supreme Court case says the petitioner must show that his failure to defend against the lawsuit was a result of excusable mistake, and that under the circumstances, he acted reasonably and not negligently when he failed to initially resist the judgment. And there's been no evidence whatsoever as to why there was a delay of almost one year after being served initially, and after six months of being notified that a default judgment was entered against them. When was the judgment final and appealable, or the action? When was that? It was 184 days after they filed, or before they filed their notice. Once they received notice of default judgment, that's when it was final and appealable. And then there's nothing, we basically, you know, Mr. Tyson, myself, went forward and did everything required by statute to notify those that we had to, get the judicial sale taken care of, but still, nothing on the part of the bank until they filed this 14-year-old case. It was final at the time of the judicial sale when you received the deed, the judicial deed. It was final by then. By then, and then, I don't mean by then. Why would it be by then? All you had was a default order, not a default judgment. Oh, no, we had the default judgment, and we had the sale. The sale took place 103 days before they entered. We had already had our judgment, then we basically went ahead and had the property sold. And we were the high bidder. But at the time, it was already a final judgment which was appealable by that time. By the time we had the judicial sale, it was basically just at that point. Executing on the judgment, okay. Yes, Your Honor. And they've presented no excuse to the trial court or even to this court as to what their excuse was for waiting so long before they do something. And the Supreme Court says, you know, this is not an option. This is a requirement. They have to show why they waited so long. And the facts in the Smith case are almost identical to this time-wise. And that's basically the issue that the Supreme Court addressed in Smith was just the due diligence. It didn't really talk about any of the meritorious defenses. It basically just focused on what is due diligence in presenting this motion. And they said, you know, you have to show us a reason why. In Smith, they tried to say, well, they served the wrong person. You know, we didn't get notice of it. None of that's been alleged here. All they're saying right here is, well, you know, six months, seven months. Did the trial court comment on this at all? No. There was nothing really mentioned in the order specifically addressing the due diligence. And when we were arguing it, the court didn't have any comments about that. Can the court in its discretion ignore the lack of showing of due diligence in exercising its equitable powers to do justice? Even when there is a lack of showing, doesn't the trial court still have that discretion? If they can show that we somehow obtained that default judgment by fraud, because the defendant has not proved any evidence which would demonstrate unfair, unjust, or unconscionable behavior or any indication that a plaintiff was deceptive in obtaining the default judgment, I don't see how it can be alleged that we were deceptive in obtaining this default judgment. When we went above and beyond, I believe, what we had to do by giving them extra notice that we were actually doing something, that we had the default judgment entered, that we had the notice of sale. So I think what the court is addressing there, Your Honor, is us obtaining the default judgment. Were we somehow unfair or being, you know, trying to be sneaky in getting this default judgment and hoping no one did anything about it for a while and then we tried to enforce it? I believe we did everything. I believe we did even more than everything to let them know that we were doing this. And for some reason, and I can't speak for the bank, but I don't know why they just didn't do anything until they filed a 1401 petition. So it's our position that we followed, we did everything required of us by the law. We were not deceptive in obtaining this default judgment and they were, there's no excuse, there's no reasonable excuse as to why they waited the length of time they did and they were not diligent in presenting this motion and therefore the trial court should not have granted their 1401 petition. Thank you. Thank you, counsel. Mr. Demachek, do you have? Close enough, Judge. Okay. Counsel, Your Honor, Ron Demachek on behalf of Deutsche Bank as trustee. First, in answer to the question as to finality, foreclosure judgment in Illinois is not final until the sale has been confirmed. That establishes finality. In this case, according to the chart in the appellant's brief, the foreclosure sale was held on December 11, 2008. I don't have the specific date of confirmation. I didn't see the confirming order in here. And the motion to vacate the 214-01 petition was filed on March 15, 2009. So within approximately four months. Also, in answer to your question on the issue of the judge's discretion, the judge in this case has discretion to vacate an order which the judge feels improper if he feels injustice or something else has gone wrong, regardless of the question of due diligence. 214-01 gives deference to the trial court in this matter and provides that the 214-01 decision can only be set aside on an abusive discretion ground because the trial court was involved in the proceeding. The trial judge knows what was presented to him, knows what the basis of his decision was, considered that evidence, considered what was before him on our oral argument, and made the decision based on those findings. In this case, what the trial judge understood was that there was a foreclosure complaint filed by Alliance Savings in this matter. And what he understood was that Alliance Savings tried to intervene in the Deutsche Bank foreclosure, filed that, I believe, in about January of 2008, coming in to intervene in Deutsche Bank's foreclosure. I went in and said, wait a minute, this is tenancy by the entirety of property. You don't have a valid lien. I'm objecting to intervention. On March 4th, Alliance Savings files the incident foreclosure action. And then on March 5th, 2008, Alliance Savings sends a letter to the judge saying, I'm withdrawing the intervention. It doesn't say, I filed another action. It just says, I'm withdrawing my intervention here. Instead, Alliance Savings goes on and proceeds with his own foreclosure action. And Alliance Savings does that based upon a foreclosure complaint that does name Jerry Wilson, who was the judgment debtor, and does name Deutsche Bank, which is the other lien holder, does not name Mrs. Wilson. But the complaint itself says that they are seeking to foreclose a described piece of property. And that described piece of property is all of the property. It doesn't say, I'm seeking to foreclose a one-half interest in the property. Based upon that complaint, the trial court entered a judgment by default against Jerry Wilson, against Deutsche Bank, which says, I'm entering a judgment of foreclosure, not against a one-half interest in the property, but against all of the property. And a sale is held, and a judicial deed is issued. And the judicial deed says, all of the property. It doesn't say, only a one-half interest in the property, only Jerry Wilson's interest in the property.  Now, Mrs. Wilson was not named in that complaint. But the fact is, we do have a complaint, a judgment, and a deed that all refer to the entire property. Moreover, because Alliance Savings knew about our foreclosure, they actually tried to intervene in it, and they intervened after a foreclosure sale had been held, but before it was confirmed, so it was not yet final. But when they intervened, they knew that the foreclosure sale had been held. They knew that we were going to succeed to title because they were backing out. So when they go to prosecute their foreclosure action, they have to know that we're the sole owner. So regardless of whether they name Mrs. Wilson or not, they know, and their time frame shows we've got a deed to the property, they know that they're foreclosing the entire property. So Mrs. Wilson is out of the picture when they get their judgment, when they get their deed. So this argument about them only foreclosing Jerry Wilson's interest I think was recognized by the trial judge that said, hey, this looks like you pursued a cause of action which you didn't have the right to do. Even if you could have pursued a half interest in the property, you couldn't have pursued a whole interest. And so at any standard, due diligence or not, I'm not going to let this judgment and this deed stand. Now, we do get to the issues about what is the right of a judgment predator against one of the tenants in tenancy by the entirety. And counsel says that we have a couple of decisions that say, I'm sorry, actually I should address just briefly the Smith versus Erwin, which they say is on all fours on the issue of due diligence. Smith versus Erwin is a different situation. If we read that case, we see that the person who allegedly was served with process, actually I think took a deposition or otherwise found out, that he admitted that, yes, he was served. And what was going on in that case was there was a series of negotiations going on. And the defendant in that case apparently decided not to pursue the litigation angle, intentionally decided. And in that situation, the court said essentially, if you acknowledge you got the service, you knew about the case, and you just chose to negotiate, I'm not going to let you come in on a 214.1 petition. In this case, the facts are different. What we have is an affidavit of their process server which shows a service on an individual in California, supposedly on behalf of Deutsche Bank. That's all there is on there. It has no name of who the individual is? No, it does have a person's name in the affidavit. Does that person work for your client? I'm sorry? Does that person work for your client or do you have any knowledge of this person? That I don't know the answer to. What I know is we had a search done to find out if we had any record of this proceeding. And there is an affidavit submitted in support of the 214.1 petition, which essentially says Deutsche Bank has no record of this case. You don't describe what you did in this search, though. You filed an affidavit saying you didn't get it, but it doesn't say this lady didn't work for us, or she worked for us and she didn't get it. You've got control over all the records, and simply you said you didn't get it. That's correct. We said we had no record of finding it. But without letting us know what you did to come to that conclusion. That's correct, Judge. Did you ever determine what this person was or did? Was it an employee, not an employee, not an agent? I apologize. I actually did not do the investigation myself, and I did not know the answer as to the question. So it could have been the agent? It is possible it could have been the agent. Then that would have been good service. If that was the agent and they did serve him, that would have been good service. However, we still have the issue, which is, you know, you serve that person, and for some reason it doesn't get to the right place. We were the attorneys filing this lawsuit. Remember, we have an alliance. Deutsche Bank is filing a mortgage foreclosure action. Alliance Savings tries to come into that case, and we yell and scream and say, You have no right in this property. It's fencing by the attorneys. We're fighting like crazy. It makes no sense for us to sit back on our haunches when Alliance Savings then files another foreclosure action, and that's what happens in Smith v. Arrow. They acknowledge service. They do nothing. They try and negotiate. Here, we've been as aggressive as possible in arguing this position, and for whatever reason, and I can't tell you. It could be that this person from California failed to properly communicate with you guys in Illinois here, right? That's quite possible, because if it hadn't communicated, we certainly would have done something just as we did now and just as we did when they first tried to intervene. So I can't tell you whether it was the right person or not. Should we take anything away from they contend that they asked you to accept service or provide them with the proper mailing address and you wouldn't give it to them? I think the thing you take away from that is if you read their communication, which was not part of the underlying trial record, but if you read that communication, it says, you know, we're going to file suit. Our client has instructed us to file suit. Well, they had actually filed suit on March 4th before they filed their request to withdraw their intervention. They never gave me the suit, and I know there's case law out there, which is they don't have a duty to give the other attorney a case law, but I think if you look at that, it basically looked to me to be a threatening letter saying, we've got instructions to file suit. My assumption was if they served and they served us properly and it made it through the channels, we would have gotten and taken action. I didn't read in that that there was already a suit filed. But then we look at the question of what happens here with tenancy by the entirety and whether there is any case law on this issue of the tenancy by the entirety, whether it attaches or not. What counsel says is the bankruptcy court in Tolson says that means it attaches, but if we look at Tolson, Tolson actually cites the two Pennsylvania cases when it's doing its analysis of whether or not it attaches. If we look at Illinois law, we have the McKiernan decision, which is the second district in 1994, citing back to the Cochran v. Cutler decision, which is an older decision, I think it's a 76 decision, and those cases said that the judgment doesn't attach because the property can't be sold. And that's what Illinois says. What again were those cases? There's the McKiernan decision. I'm sure they're in your brief. Yeah, they are. McKiernan is 268, Illap III, 383. And that case cites back to a decision called Cochran, and Cochran is 39, Illap III, 602. And I'm quoting now from McKiernan. Is McKiernan in your brief? Yeah, McKiernan, MCK. And what that says is Cochran also knows, however, that the lien of judgment does not attach to the judgment that is homestead. Cochran was a homestead exception case. McKiernan was a tenancy by the entirety case. So I believe those cases establish that a judgment lien does not attach to tenancy by the entirety. The mortgage system in our country, in our state, couldn't work if sometime after we file or report our mortgage that they can then get a judgment lien against property by virtue of reporting a memorandum against one party. It also can't work if before we report our mortgage that same thing happens because what works lender is going to go out and make a loan to anybody if a creditor of one of two spouses holding tenancy by the entirety of property can basically foil the other party's ability to get a loan. What we have here is a creditor of husband but not creditor of wife. If the husband creditor can report a lien and it attaches, that would prevent the wife from enjoying her interest in the property because no lender would lend that money. So the lien doesn't attach. The fact that there is a memorandum recorded has no impact on a mortgage lender as long as under the terms of the tenancy by the entirety statute, the property is held in tenancy by the entirety. You can't sell the property. And the Kiernan and Cockrell tell us that that means that there is no lien that attaches to the property. You've also cited on page 13, Lehman v. Cottrell, a 1939 case. Was there any language in there that indicated you could abandon a joint tenancy or tenancy by entirety? The Lehman v. Cottrell case does refer as some language in it which talks about, I believe that was a Homestead case, and I believe in that case there was some language about if you abandon the Homestead, then a lien can attach not at the earlier date when you got your judgment but as of the time when you abandoned the property. So in other words, in this case we actually have mortgage number one by the Deutsche Bank entity, then you have their judgment recorded as the one husband, then a refinanced mortgage by Deutsche Bank. And we then later on have an argument that the property has been abandoned. And I think the point you're making is it's possible that under the Lehman case that that abandonment later down the road would allow a judgment to attach. In that case I think what they said was essentially it's a race to the courthouse type situation because everybody who's got their judgment at that point in time can then go try to force it. And that wouldn't apply in this case for what reason? Well, I think in this case we have a couple of reasons. The first one is what is the evidence that was before the trial court when this case was presented to it? Zero. There was no evidence of abandonment. What we have in this case is simply a complaint being filed naming husband and naming Deutsche Bank. Supposedly served on Deutsche Bank and a default judgment being entered. D to the entire property. In response to the motion to vacate, what's been submitted is an affidavit from a process server in the Deutsche Bank foreclosure which essentially says I tried to serve Deutsche Bank's foreclosure complaint and there was nobody in the home at the time. So first, that is not evidence that was before the trial court initially. Secondly, that doesn't establish abandonment of a homestead. The fact that a home is not occupied doesn't mean that it's been abandoned necessarily. And in fact, counsel makes the point in their brief that says the trial court's finding in its judgment of foreclosure says this property had been abandoned. Well, when the court made that finding, Deutsche Bank was the owner of the property. The property had been foreclosed. We bought it at a sale. We still owned it. We hadn't abandoned it. We were trying to sell it. What's required for abandonment is to show intent. You also, in the case of the homestead, would have to establish that a new homestead had been established rather than abandon the old one. What we have here is no evidence at all in the underlying proceedings. So no discovery on that issue. No evidence presented to the trial court on that issue. On the motion to vacate, we have an affidavit of process there saying I tried to serve Deutsche Bank's foreclosure and these people weren't at the home. And the utilities were off at the time. But that doesn't establish that a new homestead had been established. That doesn't establish that this homestead had been abandoned. But let's say even if we take that as abandonment, let's say that the tenancy by the entirety no longer exists. Let's say that Lehman says that under that circumstance, as of that late date, Alliance Stavings' judgment attaches to a one-half interest. And let's say that they've only tried to propose one-half interest in this case. The latter point can really be established in any shape or form. I know the trial court judge didn't agree with that when he made his ruling. But let's say all those facts. The question is, at that point, what rights does Deutsche Bank or the successful purchaser at a foreclosure sale have if Alliance Stavings was not named in the initial proceeding, which technology was not? I believe that the rights are still those of separation. And the reason I believe that is that Illinois law is absolutely clear that a mortgage holder who pays off a preexisting lien with the understanding that they're going to have a first lien on that property is entitled to separate to the position of that lien. The same is true of a purchaser who purchases property. Illinois law makes clear that the rights that there's, if you take the Union Planters case, and there's the DeCaro case, DeCaro cites Young v. Morgan and its capital, there's the ancient capital case, the law established that if you pay off a preexisting obligation, you are entitled to step into the shoes of that party. That's what the right of segregation is. The foreclosure law does say that if you haven't been joined, then you have a right to assert your interest in the property.  The question is, did the Illinois mortgage foreclosure law say you don't have any right to raise any defenses or challenges? Did the legislature contemplate that we're going to upset or change over the longstanding priorities established by our law? Our law says there's no reason a judgment creditor who never paid a loan based on his property, who never relied on the property to secure his debt, who was always behind Deutsche Bank, should be fortuitously benefited by the fact that they weren't in the foreclosure proceeding. Yes, the statute says they have a right to file a foreclosure proceeding. Yes, the statute says they have a right to assert their interest. We have a right to assert a defense, and the defense is as the purchaser of this property at a foreclosure sale, we essentially step into the shoes, priority-wise, of the people who are going to be foreclosed. Thank you. Any rebuttal? To that last point, the lien, the judgment lien, predated, was recorded before they decided to make the mortgage. They did it consciously. Our judgment lien was recorded before they made the mortgage that was foreclosed. They consciously made that loan. They consciously, or by mistake of their title company, decided not to name this in their foreclosure. They, therefore, have waived that priority argument. The priority argument should have occurred in their first foreclosure. They waived it. At the time they made the loan, was it a valid tenancy by entirety? Was there any evidence that he wasn't living there at that time? Arguably, yes. Yes. I think it probably was at the time the mortgage was made. So your lien wouldn't attach to that at that time? It would attach. Just wouldn't be, couldn't execute? Couldn't be enforced in foreclosure. Correct. This Lehman case they cite, I believe in that. I may have it mixed up. But somebody had left their home, an older man, and was living with his daughter, and they found factually he had not abandoned it, even though he was not living there, and maybe the gas was off and the water was off, just like your case. Right. Well, the difference in my case is this house was vacant, utilities off, their process server on the return of service said to call the people. They told him they had it for sale. He said that these people can't be served here. These are all sworn statements from their process server. In fact, they serve these people by publication, newspaper publication. In the second foreclosure, we served these people at their residence in Collinsville, at their new residence in Collinsville. So for years. These are all factual issues, though, in which the only evidence was uncontroverted affidavits, but affidavits that contained hearsay and everything. There's no affidavit from the Wilson. No, that's correct. Okay. Go ahead. So I want the court to know this was either a conscious decision or a mistake of the mortgage company's title company missing these liens, making the decision to make the loan where the title company missed this lien, and then the bank made the loan because it wasn't revealed in the title report. Mr. Domashek asks, what lender would make that loan? If this was the law, what lender would make that mortgage loan, knowing that this is a tenancy by the entirety of the property and a preexisting lien exists? And the answer is no lender should. They did, but no lender should. If you're a lender and there's a preexisting lien, why would you make that loan, knowing that Illinois law says that the tenants by the entirety, by operation of law, could revert to a joint tenancy? What I say to you is lenders aren't making those loans. Lenders don't want that risk, don't want that uncertainty. They made the loan. Most lenders don't. Talking about Jerry Wilson's 50% interest, he seems to suggest in our complaint, second foreclosure, that we should say that Jerry owns 50% of this property, the north 50 feet or the west 50 feet, some undivided proportion, has a joint tenant or even has a tenant by the entirety. The husband owns an undivided 50% of the whole thing, not part of it. So you don't name half of 2632 Main Street. You name the entire legal description. You name the entire property common address, the tax ID number. It's not the south part of it. It's 50% of the whole. There was no representation that we were foreclosing 100% of this house. The motion to intervene. We tried to intervene. Alliance Savings tried to intervene at a very late date in the first foreclosure. We didn't know about it until very late in the process. Alliance Savings tried to intervene to have its priority litigated. Unbeknownst to Alliance Savings, the same day it filed its motion to intervene, earlier in the day, several hours ahead of time, the foreclosure sale had already occurred, the first foreclosure. That's why it was withdrawn, the motion to intervene, not under threat of sanctions from Mr. Donald Jackson. Why does that make it a reason you withdraw it? You were within 30 days of the sale. I mean you could move to set aside the sale. We could. I don't understand that connection. Looking at the Illinois foreclosure statute, it says if you're an omitted lien holder, you have the right to file your own foreclosure. It was our option. My client decided, let's just start our own foreclosure. We're omitted. We can file our own foreclosure for our judgment lien. And so that was a decision we made. We asked counsel for Deutsche Bank if they would accept service. They declined. They don't have to. That's fine. Thank you, Joe. Thank you, gentlemen, for your briefs and your arguments. We'll take a matter under advisement and get back with you in due course. Thank you all.